CASE 71—EQUITY—MARCH 4.

# City of Ludlow v. The Trustees of the Cincinnati Southern Railway, &c.

APPEAL FROM KENTON CHANCERY COURT.

1. The city of Ludlow having levied an assessment upon all the real estate lying upon a certain street within its limits, for the purpose of improving the street—*held*, that a lot upon the street owned by the appellee, the Cincinnati Southern Railway Company, is subject to the assessment.

2. The fact that the lot is the property of a railway company, and is used for railroad purposes, furnishes no more reason why it should be exempted from an assessment than if it belonged to a natural person.

J. F. & C. H. FISK FOR APPELLANT.

1. The question as to whether the improvement of Ash street is proper or not is a legislative question, or if judicial, it is to be decided by the council of the city of Ludlow. (Sec. 1, chap. 1419, Acts 1871, vol. 1, p. 333.)

2. A railway company owning a lot upon a street ordered by the city authority to be improved at the expense of lot-owners, is as much bound to pay its proportion as private individuals. (Johnson v. City of Louisville, 11 Bush, 529; 11 Johnson, 77; 4 Hill, 76; Redfield on Law Railways, vol. 2, 389; 10 Ohio; 46 N. Y., 506; 8 Bush, 508; 24 Missouri, 20; 13 Penn., 107; 10 Bush, 549.)

C. B. SIMRALL FOR APPELLEE, CINCINNATI SOUTHERN RAILWAY COMPANY.

1. Usually it is no objection to a tax that the person required to pay it derives no benefit from that particular burden; but there are circumstances when courts will restrain the collection of the tax. (Courtney v. Louisville, 12 Bush, 419; Preston v. Roberts, Ibid, 570; Bradley v. McAtee, 7 Bush, 667; 11 Johnson, 77; 8 Bush, 508; Louisville v. Nevin, 10 Bush, 550; 36 Conn., 255; 33 Penn., 41.)

2. The law treats a railroad and all its appurtenances as one entire thing, not legally subject to coercive severance or dislocation. It is not a subject of local taxation by the counties through which it runs. (Applegate v. Ernst, 3 Bush, 648; Lou. and Nash. R. R. Co. v. Warren County Court, 5 Bush, 247; Johnson v. Louisville, 11 Bush, 531; 5 Rawle, 291; 36 Conn., 255; Redfield on Railways, vol. 2, 388; 10 Ohio, 160; 12 Iowa, 112; 38 Conn., 422; 32 Cal., 499; 41 Ill., 306.)

City of Ludlow v. The Trustees of the Cincinnati Southern Railway, &c.

3. The alleged improvement was unnecessary, and was made to accommodate travel which entered Ludlow from the east, which of necessity passed over a portion of Ash street. No such power over the property of the subject can constitutionally be exercised by any department of our state government. (Howell v. Bristol, 8 Bush, 493.)

SIMMONS & SCHMIDT for appellee, J. W. Rich.

A lien cannot exist upon a part of a railroad. It must be upon the entire road. It cannot be sold in parcels; it must be sold as an entirety, and the judgment should be affirmed. (Acts General Assembly, 1871, 333; Acts 1873, 2d vol., 576, sec. 7.)

JUDGE HINES delivered the opinion of the court.

This suit was brought by the contractor, J. W. Rich, against appellant and the trustees of the Cincinnati Southern Railway, to recover an assessment made by the city upon a lot belonging to the trustees, and abutting on the improved street. The court below held that the lot was necessary for the operation and maintenance of the railway, and refused to subject it to the payment of the claim, and rendered judgment against the city. The correctness of that ruling is questioned on this appeal.

It is suggested by counsel for the trustees that the lot is not liable to assessment: 1st, because it was not benefited by the improvement; and 2d, because as it has been withdrawn from the ordinary uses to which town lots are appropriated, and has become a part of the railway, essential to its operation, it is not within the policy of the law subjecting town lots to such local burdens.

The evidence shows that the lot supports a portion of the masonry of the road-bed, and is essential to the proper drainage of the track.

The assessment was made upon the lots in proportion to the number of front feet, and in accordance with the provisions of the charter.

The objection that the lot was not benefited by the improvement of the street is sufficiently answered by the case of McFerran v. Alloway (14 Bush, 580). In that case the legislature had authorized the levy of a tax upon all the property within a certain precinct to pay for the construction of a railroad running through it. Within this district is an island in the Ohio river so situated that access to the Kentucky shore along which the road ran was so dangerous and difficult as to deprive the owner of the island of any benefit from the construction of the road. In answer to this objection to the payment of the tax on the island the court said:

"The power on the part of the legislature to establish this district, or to authorize the particular precinct to vote the tax, is conceded, and the fact that the local improvement has been, or is being constructed in the taxing district, is also admitted, and in such a case it seems to us the legislative discretion on the subject must control. This court has so often determined that such power existed in the legislature of this State that it is no longer an open question; and the benefits to be derived by those living in the locality of the improvement having been determined by the legislature in passing the act under which the tax was imposed, this court has no revisory power over it. In the judgment of the legislature this taxing district is benefited by the improvement; and the fact that an actual benefit is not derived by one living in a remote part of the district, or where it is difficult to approach the road or highway, is no argument against the imposition of the burden."

The fact that the local burden in that case was assessed in proportion to the value of the property, instead, as in this

case, upon the area or frontage, can make no difference. The principle is the same in both instances.

While assessments of this character, as distinguished from general taxation, rest upon the basis of benefits or presumable benefits to the property assessed, it is not essential to their validity that actual enhancement in value, or other benefit to the owner, shall be shown. The passage of the ordinance by the city council, under the power granted in the charter, is conclusive of the propriety of the improvement, and of the question of benefit to the owners of abutting property. (Northern Indiana R. R. Co. v. Connelly, 10 Ohio State, 164.) Absolute equality in the distribution of such burdens cannot be attained. An approximation to equality is all that is possible, but in reaching this point the present or prospective use of the property cannot enter into the calculation.

As indicated, the second position contended for by counsel for the trustees is, that as the lot upon which the assessment was made is necessary for the operation of the railway, it is contrary to public policy to subject it to this burden.

In support of this, counsel cite and rely upon the following cases decided by this court: Phillips v. Winslow, 18 B. M.; Applegate v. Ernst, 3 Bush; Warren County v. Louisville and Nashville R. R., 5 Bush; Elizabethtown and Paducah R. R. v. Trustees of Elizabethtown, 12 Bush, and Graham v. Mt. Sterling Coal Road Company, 14 Bush.

In Phillips v. Winslow it was held that, in the absence of express legislative authority, the interest of the public in the maintenance and operation of a railway was such that the cars and fuel of this road could not be sold under *execution*.

The most that is decided in the case of Applegate v. Ernst is, that when the law taxes a railroad for state purposes

as an entirety, an act authorizing a county to levy a tax for local purposes will not be construed to embrace the property of the railroad company lying within the county.

The case of Louisville and Nashville Railroad Company v. Warren County is in effect the same, and proceeds upon the idea, as does Applegate v. Ernst, that it is a question not of legislative power but of legislative intention.

In the case of Elizabethtown and Paducah R. R. Co. v. Trustees of Elizabethtown (12 Bush), speaking of the Applegate and Warren County cases, the court says: "These decisions are based on the general laws regulating the taxation of railroad property, and it was in view of those laws that the court said that 'to avoid such evils and absurdities, the court treats a railroad as an entire thing, not legally subject to coercive severance or dislocation.'" Immediately following this, the opinion says:

"But we have here an act of the legislature expressly providing for this coercive severance or dislocation. With the propriety or policy of the act we have nothing to do. We cannot say that it violates any provision of the organic law, nor that it destroys the equality and uniformity of taxation, and hence the courts cannot, on this account alone, interfere to prevent its enforcement."

In that case an act of the legislature authorized the trustees of Elizabethtown to levy and collect a tax on railroads, for certain purposes, but did not provide for the manner of its collection. The tax was levied, and to enforce its payment the marshal seized, and was proceeding to sell, two freight cars. This court held that, as no method of collection had been provided by the act, it was to be inferred that there was no legislative intention to contravene the public policy as declared in the cases cited, and that the collection

of the tax could only be enforced under the supervision of a court of equity.

The case of Graham v. Mt. Sterling Coal Road Company declares the policy of the state to be as indicated in the opinions cited. There was an attempt in that case to enforce a mechanic's lien on certain bridges of the road, and the court held that the terms of the mechanic's lien law would not authorize the conclusion that it was the intention of the legislature to embrace such structures.

These cases bear upon the case under consideration in so far as to furnish a rule of construction for statutes laying local burdens upon such *quasi* public corporations as railroads, but when the rule is applied to assessments for local improvements, where the statute directs that the property assessed be sold to satisfy the claim, *and directs the manner in which it shall be sold*, it will be found not to forbid the fragmentary sales against which those cases are directed.

The difference between this case and the case of the Elizabethtown and Paducah Railroad and the Phillips-Winslow case is, that in those cases the manner in which the claim against the railroad company was to be satisfied was not prescribed by the statute, while here the liability of the railroad is provided for by statute, and the manner of its enforcement as well. The charter of the city makes all property liable to assessment, and provides that the property thus assessed shall be sold in a specific way to satisfy the claim. The cases cited would be analogous if the law not only provided that the property of the railroad should be subjected, but also provided that it should be sold to satisfy the demand.

But if there were any doubt on this point, we would not hesitate, on the authority of the L., C. & Lex. R. R. Co.

and the Louisville Transfer Co. v. Obst & Stengel, decided. by this court in February, 1875, to hold that the property of the company should be sold to satisfy the assessment. In that case the road-bed and the grounds belonging to the company were directed to be sold to satisfy a sum assessed against the companies for street improvement, and under a. charter of the city of Louisville, similar in this respect to· the charter of the city of Ludlow. In the opinion in that case, which was delivered by Judge Lindsay, who delivered the opinion in the Elizabethtown and Paducah Railroad case, it is said: "Real property held by railroad companies within the corporate limits of the city of Louisville is not exempt from street taxation. The terms of the grant of the power to tax for such purposes includes all real estate, and that held by railroad companies, like that held by churches, colleges, hospitals, and other institutions of like character, must. bear its proportion of the local burden. There is no constitutional restriction upon the power of the legislature to impose local taxation upon railroad companies. It is a mere question of policy."

The rulings of the courts of last resort in other states are almost uniformly in accord with the decision of this court. upon this question.

In the City of Chicago v. Barr (41 Ill., 306) it was held that a street railway was subject to assessment for the improvement of the street on which it was located.

In the Northern Indiana R. R. Co. v. Connelly (10 Ohio State, 164) it was held that the road-bed was assessable for street improvement, notwithstanding the fact that the company derived no benefit from the improvement on the street.

In the B. & M. R. R. Co. v. Spearman (22 Iowa, 112),

the depot grounds were held to be subject to assessment for street improvement.

To the same effect are the cases of City of New Haven v. Fair Haven and Westville R. R. Co., 38 Conn., 422; Street Railway Appeal, 32 Cal.; Emery v. Gas Co., 28 Cal.; State v. Newark, 3 Dutcher (N. J.); Taylor v. Palmer, 31 Cal.; State v. New Brunswick, 1 Vroom; Railroad v. Spearman, 12 Iowa; Draining Co. case, 11 La. An., and Orange and Alexandria Railroad Co. v. The City of Alexandria, 17 Grattan.

We think that, both upon reason and authority, a lot held and owned by the railway company as this is held and used, is as much subject to assessment for street improvement as if it belonged to a natural person. In the law authorizing the assessment there is no exemption of railroad property, nor exemption of property because of its application to certain uses.

Judgment reversed, and cause remanded, with directions for further proceedings consistent with this opinion.